UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALVIN HILLS, individually and on behalf of all others similarly situated<br><br>VERSUS<br><br>PAC HOUSING GROUP, LLC, *et al.* | CIVIL ACTION<br><br>NO. 23-5740<br><br>SECTION M (4) |

## ORDER & REASONS

Before the Court is a motion for class certification filed by plaintiffs Alvin Hills, Donnell Matlock, Jack Martin, and Debra Jackson (collectively, "Plaintiffs").[1] Defendants PAC Housing Group, LLC, MOF Parc-Fontaine, LLC, MOF-Preservation of Affordability Corp., Ministry Outreach Foundation, and Richard Hamlet (collectively, "Defendants") respond in opposition,[2] and Plaintiffs reply in further support of their motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion because Plaintiffs have satisfied all of the pertinent requirements for class certification set forth in Rule 23 of the Federal Rules of Civil Procedure.

**I.    BACKGROUND**

This case involves a putative class action brought by current and former tenants against the owners and property managers of the Parc Fontaine apartment complex for damages caused by the Defendants' alleged failure to provide adequate facilities.[4] In their amended complaint, Plaintiffs

---

[1] R. Doc. 99.
[2] R. Doc. 105.
[3] R. Doc. 106.
[4] R. Doc. 57. Plaintiffs allege that the Defendants operated as a single-business enterprise with: common offices, leadership, employees, and identity of ownership; excessive fragmentation; centralized accounting; unified administrative control; and having caused the incorporation of each other. *Id.* at 24-28. They also allege that Defendants operate as Hamlet's alter ego. *Id.* at 28-36. For the purposes of this motion, the Court accepts these allegations as true, but these issues are not now before the Court.

allege that they all signed the same standard-form lease agreement that required Defendants to provide certain amenities, such as reasonably clean common areas, water, trash removal, wastewater, and pest control, and to maintain the fixtures, furniture, hot water system, and HVAC equipment.[5] Plaintiffs further allege that Defendants breached the standard-form lease agreement by failing to maintain common areas of the apartment complex, including, but not limited to, pools, gates, laundry rooms, gyms, mailboxes, lighting, trash removal, fire alarms, and elevators.[6] They also allege that Defendants failed to provide pest control and functioning administrative support.[7]

Plaintiffs seek to represent a class defined as follows:

> All natural persons who leased and resided at a Parc Fontaine apartment unit owned by any of the Defendants at any time during the period from December 1, 2018 to the present on whose behalf, any Defendant was paid rent. This class excludes Defendants, their affiliates, employees, officers and directors, and the Judge(s) assigned to this case.[8]

Plaintiffs assert several theories of liability, including breach of contract for Defendants' failure to perform obligations under the lease, breach of warranty of suitability, breach of warranty against vices and defects, negligent or intentional misrepresentation, aiding and abetting negligent or intentional misrepresentation (against Hamlet), and unjust enrichment.[9] They also ask for a declaratory judgment that Defendants violated the terms of the lease regarding safe and healthy housing and legal regulations governing safe and healthy housing, including, but not limited to,

---

[5] *Id.* at 36-38.
[6] *Id.* 17-24, 38-50, 54-59.
[7] *Id.*
[8] R. Doc. 99-1 at 21. Plaintiffs also propose the following alternative class definition:

> All natural persons who leased and resided at a Parc Fontaine apartment unit owned by any of the Defendants at any time during the period from December 1, 2018 to the present on whose behalf any Defendant was paid rent and experienced uninhabitable conditions in the common areas, common facilities, and common appurtenances based [on] Defendants' failure to maintain and provide such common areas, facilities, and appurtenances. This class excludes Defendants, their affiliates, employees, officers and directors, and the Judge(s) assigned to this case.

*Id.* at 21 n.102.
[9] R. Doc. 57 at 54-60

regulations of the United States Department of Housing and Urban Development.[10] Plaintiffs claim that they "suffered financial losses in the form of paying rent for apartment units and apartment facilities that were inadequately provided," and they seek as damages the "[r]eturn of all rent money or in the alternative return of part of rent money and consequential damages."[11]

**II.    LAW & ANALYSIS**

A party seeking class certification must demonstrate that the case is appropriate for class treatment under the standards set forth in Rule 23 of the Federal Rules of Civil Procedure. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Implied in Rule 23 is the prerequisite that "'the class sought to be represented must be adequately defined and clearly ascertainable.'" *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)). If the proposed class is ascertainable, the party seeking certification must next meet the express requirements of Rule 23. *Seeligson v. Devon Energy Prod. Co., L.P.*, 761 F. App'x 329, 333 (5th Cir. 2019). First, the case must meet all four prerequisites of Rule 23(a): (1) numerosity – "the class is so numerous that joinder of all members is impracticable"; (2) commonality – "there are questions of law or fact common to the class"; (3) typicality – "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) adequacy of representation – "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

If all four of the Rule 23(a) prerequisites are satisfied, the case may be maintained as a class action only if the party seeking class certification satisfies the requirements for one or more of the three types of class action under Rule 23(b). Here, Plaintiffs seek class certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate

---

[10] *Id.* at 61-63.
[11] *Id.* at 63.

over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In analyzing predominance and superiority, a court considers:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.*

A district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). "Rule 23 requires the court to find, not assume, the facts favoring class certification." *Prantil v. Arkema Inc.*, 986 F.3d 570, 579 (5th Cir. 2021) (internal quotation marks and alteration omitted). Class certification is a matter for the district court's discretion because it is essentially a fact-based inquiry and arises from "the district court's inherent power to manage and control pending litigation." *Sampson v. United Servs. Auto. Ass'n*, 83 F.4th 414, 418 (5th Cir. 2023) (quotation omitted). Although a court should not reach the merits of plaintiffs' claims in a class certification decision, it may look beyond the pleadings to understand the claims, defenses, substantive law, and relevant facts in determining whether the case may proceed as a class action. *Castano*, 84 F.3d at 744.

   A. **Ascertainability**

As noted above, the proposed class must be adequately defined and clearly ascertainable. In other words, the class must be "defined 'mechanically' by reference to 'objective criteria,' and

*not* dependent on an 'individualized causal determination on the merits.'" *A. A., by & through P.A. v. Phillips*, 2023 WL 3994358, at *5 (M.D. La. June 14, 2023) (emphasis in original) (quoting *Union Asset*, 669 F.3d at 640); *see Seeligson*, 761 F. App'x at 334 (observing that the defendant's records and the public records provided "sufficient objective criteria from which to identify class members," in concluding that the district court did not abuse its discretion in finding the class ascertainable). "'However, the court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding.'" *Seeligson*, 761 F. App'x at 333 (quoting *Frey v. First Nat'l Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015)). "Ultimately, 'the touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *A.A., by & through P.A. v. Phillips*, 2023 WL 334010, at *2 (5th Cir. Jan. 20, 2023) (quoting *Brecher v. Republic of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015)).

     Plaintiffs argue that the members of the class are ascertainable through Defendants' records that track the tenants' names, contact information, dates of occupancy, and rent amounts.[12] Defendants do not challenge the ascertainablity of the class members per se, although they do question the sufficiency of the class definition, contending that it is temporally too broad because today's tenants are different from those in 2018.[13] While it is true that life is not static and specific conditions at the apartment complex will have undoubtedly changed over the course of time (even just seven years), it will be up to Plaintiffs to prove that their claims of inadequate common areas and facilities were persistent throughout the years of the class period – as is their allegation. This is a matter distinct from whether the class is "identifiable" by objective criteria, through ministerial

---

[12] R. Doc. 99-1 at 21, 24.
[13] R. Doc. 105 at 7.

review, rather than arduous individual inquiry. *See, e.g., Sedler v. Midland Credit Mgmt., Inc.*, 2009 WL 901479, at *2 (W.D. Ill. Mar. 31, 2009). Accordingly, the Court finds that the class is ascertainable.

### B. Rule 23(a) Requirements

#### 1. Numerosity

Numerosity for the purposes of Rule 23(a)(1) means that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "To satisfy the numerosity prong, a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000) (quotation omitted). "Although the number of members in a proposed class is not determinative of whether joinder is impracticable," the Fifth Circuit has held that a class with over 100 members "is within the range that generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citation omitted).

Here, Plaintiffs argue that they have satisfied the numerosity prong because the proposed class exceeds 150 members.[14] The Parc Fontaine complex consists of approximately 37 buildings, containing 702 apartments.[15] Data obtained from Defendants' tenant management software shows that, during the class period, at least 500 units were occupied annually: specifically, 639 units were occupied in 2019; 538 units were occupied in 2020; 519 units were occupied in 2021; 546 units were occupied in 2022; 589 units were occupied in 2023; and 586 units were occupied in 2024.[16] Plaintiffs reason that these figures show that, even assuming there was no turnover in tenants during the class period, the putative class exceeds 600 members.[17] Further, Plaintiffs argue that

---

[14] R. Doc. 99-1 at 25.
[15] *Id.* at 12, 21.
[16] *Id.* at 21 (citing R. Docs. 100-6; 103-11).
[17] *Id.* at 25.

joinder is impracticable because many putative class members are current residents who might fear retaliation or retaliatory eviction for filing an individual lawsuit against Defendants.[18]

In opposition, Defendants argue that Plaintiffs fail to satisfy the numerosity prong because they assume that residency equates to class membership.[19] Defendants contend that a resident may not fit the class definition if he or she was not exposed to the health and safety issues Plaintiffs allege existed.[20] Moreover, they say that Plaintiffs have not demonstrated that joinder of the putative plaintiffs would be impracticable because they rely on fabricated and baseless assumptions of potential retaliation.[21] Defendants also point out that Plaintiffs' proposed class definition seeks to include "residents" who may not be able to recover rental reimbursement as damages if those residents were not the actual lessees.[22] According to Defendants, the inclusion of non-lessee residents in the class definition morphs Plaintiffs' breach-of-contract claim into a tort claim.[23]

Plaintiffs reply, arguing that the Court must consider the complaint as a whole to determine whether the numerosity prong is satisfied and reach a "commonsense conclusion based on the number of units and the allegations of who was impacted."[24] They point out that this was the approach taken in *Akeem v. Dasmen Residential, LLC*, 2021 WL 4804049 (E.D. La. Oct. 14, 2021), a case in which this Court found the numerosity prong was satisfied when the plaintiffs showed the number of apartment units and occupancy during the class period. Plaintiffs further contend that there is no need for them to show fear of retaliation based on Defendants' actions, but rather,

---

[18] *Id.*
[19] R. Doc. 105 at 8.
[20] *Id.* at 8-9.
[21] *Id.* at 9.
[22] *Id.* at 10.
[23] *Id.*
[24] R. Doc. 106 at 10.

a reasonable presumption of retaliation is sufficient.[25] Also, say Plaintiffs, it makes no sense for hundreds of disgruntled tenants to be joined in this action as to "flood[] the court system."[26]

Rhetoric and irrelevant issues aside, Plaintiffs have satisfied the numerosity prong. The case involves a 702-unit apartment complex that had over 500 units occupied for each year of the class period. Even assuming that there was no tenant turnover, the putative class would likely include over 500 individuals who were both lessees and residents, which is well within the range held to satisfy the numerosity requirement. Additionally, joinder of so many tenant claims would be impracticable. It is unnecessary for the Court to resolve the largely irrelevant dispute over retaliation to arrive at these conclusions.

## 2. Commonality

Rule 23(a)(2)'s commonality prong requires that there be questions of law or fact common among the class members. Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, Plaintiffs must demonstrate that their claims depend on a common contention "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012) (quotation omitted). "The test for commonality is not demanding and is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Mullen*, 186 F.3d at 625 (quotation omitted).

Plaintiffs argue that the commonality requirement is satisfied because all putative class members share the common claim that Defendants failed to provide the services and amenities they were required to provide by operation of law or under the standard-form lease agreement or,

---

[25] *Id.* at 11.
[26] *Id.*

8

alternatively, that the Defendants "were unjustly enriched by collecting and keeping unearned rent payments."[27] Plaintiffs point out that all putative class members reside in the same apartment complex, while it was owned and managed by the same entities (*i.e.,* Defendants), and all class members signed the same standard-form lease agreement.[28] Plaintiffs then list examples of common issues of law, including: whether Defendants had an obligation under the lease agreement to provide maintenance to tenants; whether Defendants were obligated to comply with New Orleans Code Enforcement ordinances concerning health and safety; and whether Defendants breached warranties related to suitability or vices and defects.[29] Plaintiffs also argue that there are common questions of fact, including: the identities of the property manager and owner during the class period; the conditions of the common amenities, such as the laundry rooms; the existence of filth, debris, and pests in the common areas; the number of dumpsters in good condition; and whether Plaintiff are entitled to the full return of their rent money for Defendants' alleged failure to provide the core obligation of a suitable residential facility.[30]

In opposition, Defendants argue that Plaintiffs fail to satisfy the commonality requirement, like the plaintiffs in *Akeem*.[31] According to Defendants, Plaintiffs improperly assume that the common questions of law they identify have common answers.[32] Defendants also argue that Plaintiffs assume that all putative class members encountered the same issues with the common areas over the class period and sustained the same injuries as a result of the allegedly deficient

---

[27] R. Doc. 99-1 at 27-28.
[28] *Id.* at 28.
[29] *Id.*
[30] *Id.* at 29.
[31] R. Doc. 105 at 11-15.
[32] *Id.* at 12-13. Defendants also argue that Plaintiffs are attempting, through their expert reports, to back-door claims for deficiencies plaguing the interiors of their individual units. *Id.* at 13-15. The Court notes, though, that any such claims would not comport with the proposed class's asserted breach-of-contract/warranty claims.

conditions.[33] According to Defendants, a tenant or former tenant should not be able to recover for an alleged defect that he or she never encountered.[34]

Plaintiffs reply, reiterating their arguments that there are common issues of law and fact regarding Defendants' obligations, and alleged failure, to provide a safe, sanitary, and livable facility.[35] Plaintiffs argue that they have presented expert reports showing issues with the common areas and the resulting harms.[36] They also point out that, regardless of the number of buildings, the problems in the common areas of the entire apartment complex arose from the same "broken promises."[37] Further, Plaintiffs contend that this case is distinguishable from *Akeem* because, in this case, there is only one apartment complex having common ownership and management.[38]

Here, Plaintiffs have satisfied the commonality prong. They contend that all putative plaintiffs lived in the same apartment complex under the same owners and managers and all signed the same standard-form lease agreement. This is distinguishable from *Akeem* where there were five apartment complexes and different owners and managers. Plaintiffs in this case have also shown that there are common questions of law and fact regarding the Defendants' obligations to provide safe and sanitary common areas, amenities, and services to tenants and the Defendants' alleged breach of these obligations. *See, e.g., Johns v. Rozet*, 141 F.R.D. 211, 216 (D.D.C. 1992) (finding commonality when there were common issues regarding "[t]he factual determination of the living conditions existing in the common areas of [the apartment complex], and [common] legal issues including whether there was a breach of warranty of habitability," among others). Plaintiffs seek the return of rent as damages, as opposed to damages for any type of personal injury.

---

[33] *Id.* at 13.
[34] *Id.*
[35] R. Doc. 106 at 1-9.
[36] *Id.* at 3-5.
[37] *Id.* at 5.
[38] *Id.* at 5-6.

10

Consequently, how each putative plaintiff experienced the deficiencies in the common areas, amenities, or services is irrelevant to the question of whether Defendants adequately discharged their alleged obligations regarding common areas, amenities, and services.

### 3. Typicality

Typicality under Rule 23(a)(3) means that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Like commonality, the test for typicality is not demanding." *Mullen*, 186 F.3d at 625. This prong "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th Cir. 727, 736 (5th Cir. 2023) (quotation omitted). "A complete identity of claims is not required; rather, the critical inquiry is whether the named plaintiff's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.* (quotation and alterations omitted).

Plaintiffs argue that typicality is satisfied because the named plaintiffs and putative class members share complaints of Defendants' failure to provide habitable living conditions and the services and amenities owed under the standard-form lease agreements.[39] They insist that this case is distinguishable from *Akeem*, where the Court found typicality unsatisfied, because this case involves only one apartment complex, as opposed to five, and there are no subclasses – much less any that rely on divergent legal theories.[40] In opposition, Defendants argue that typicality is not satisfied because the named plaintiffs and the putative class members will experience the alleged

---

[39] R. Doc. 99-1 at 31.
[40] *Id.*

11

defects in the common spaces differently depending on the building, time of tenancy, and the impact on their individual unit, person, and property.[41]

The Court finds that typicality is satisfied. As Plaintiffs argue, this case is distinguishable from *Akeem* in that it involves only one apartment complex and no subclasses. Plaintiffs here assert a breach-of-contract claim, seeking a return of rent payments as damages for Defendants' alleged failure to maintain the common areas of the complex and provide the common services required under the standard-form lease agreement. Although each putative class member may have different feelings about or responses to the asserted deficiencies, the alleged breaches themselves are the same across the putative class and the damages sought can be determined in a formulaic manner. *See, e.g., Johns*, 141 F.R.D. at 216 (finding typicality when class members' claims arose from the same conditions in the common areas of the apartment complex and were premised on the same legal theories, including breach of the warranty of habitability). Thus, the named plaintiffs' claims are typical of the class of lessee residents.

### 4. Adequacy of Representation

Rule 23(a)(4) requires a court to consider whether the attorneys and named plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). To that end, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26 (alteration and quotation omitted). "The court must find that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members," and that the class representatives are

---

[41] R. Doc. 105 at 16-17.

directing the litigation and are sufficiently informed to do so. *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005). Three factors are considered when evaluating the adequacy of named plaintiffs:

> (1) the zeal and competence of the representatives' counsel; (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent.

*Angell*, 67 F.4th at 737 (quotation omitted). A conflict of interest may arise if a class representative proposes waiving some of the class's claims. "But not all conflicts of interest will defeat adequacy." *Id.* Thus, if the class representative chooses to forego certain claims, a court must weigh:

> (1) the risk that unnamed class members will forfeit their right to pursue the waived claim in future litigation, (2) the value of the waived claim, and (3) the strategic value of the waiver, which can include the value of proceeding as a class (if the waiver is key to certification).

*Id.* (quotation omitted).

Plaintiffs argue that they have satisfied the adequacy prong because class counsel has experience in complex class-action litigation and the named plaintiffs have agreed to represent the class and act in its best interests.[42] They also state that the named plaintiffs have all devoted extensive time to the case, including receiving intake calls, gathering documents, responding to written discovery, providing supplemental information, and being deposed.[43]

Defendants take no position on the qualifications of Plaintiffs' counsel.[44] However, Defendants argue that, if Plaintiffs are only advancing a breach-of-contract claim on behalf of the

---

[42] R. Doc. 99-1 at 32-33.
[43] *Id.* at 32.
[44] R. Doc. 105 at 17.

13

class, they cannot adequately represent putative class members who might have personal injury claims, which would be waived by those persons joining the class.[45]

In reply, Plaintiffs argue that, as class representatives, they can strategically waive select claims and remain aligned with the class.[46] Plaintiffs contend that their choice to exclude idiosyncratic individual claims and pursue the common claim of breach of the standard-form lease agreement, and the common remedy of the return of rent, bolsters their adequacy as class representatives because it is precisely this choice that will allow class certification here when it failed in *Akeem*.[47] Further, Plaintiffs argue that the supposed waiver is hardly problematic because most class members' tort claims are likely prescribed and, in any event, any putative class member can opt out of the class should he or she choose to pursue such a claim.[48]

The Court finds that Plaintiffs have satisfied the adequacy-of-representation requirement. They have experienced class counsel to which Defendants have not objected. Also, the named plaintiffs have shown that they are willing and able to act in the best interests of the class. The Court agrees that their choice to pursue a common breach-of-contract claim, as opposed to individualized tort claims, was prudent in the face of *Akeem*. "[T]he strategic value of the waiver, which can include the value of proceeding as a class (if the waiver is key to certification)" weighs in favor of adequacy here where any putative class members' individual tort claims are likely prescribed. *Slade v. Progressive Sec. Inc. Co.*, 856 F.3d 408, 413 (5th Cir. 2017); *see Angell*, 67 F.4th at 738 (finding that the strategic value of the class representatives' waiver of class members' highly individualized claims that posed an impediment to class certification was considerably greater than the waived claims' inherent worth). Further, waiver is not a real concern

---

[45] *Id.* at 17-18.
[46] R. Doc. 106 at 8.
[47] *Id.*
[48] *Id.* at 8-9.

14

because any putative class member who wishes to pursue a tort claim can opt out of the class. *See Angell*, 67 F.4th at 738 ("Any residual concerns we have regarding preclusion are assuaged by the ability of Rule 23(b)(3) class members to opt out."); *Slade*, 856 F.3d at 414 (same).

### C. Rule 23(b)(3) Requirements – Predominance and Superiority

Rule 23(b)(3) requires predominance, meaning that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. Courts must, therefore, "give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof.'" *Id.* (quoting 2 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 4:50, at 196-97 (5th ed. 2012)) (alteration omitted). In other words, a court must examine "'whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Id.* (quoting NEWBERG, *supra*, § 4:49, at 195-96). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* at 453-54 (quoting 7AA CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1778, at 123-24 (3d ed. 2005)). "Even where plaintiffs seeking class certification show that common

issues predominate on questions of liability, they must also present a damages model establishing that damages are capable of measurement on a classwide basis," such as by "a reasonably ascertainable formula." *Angell*, 67 F.4th at 739-40.

The predominance inquiry requires a court "to consider how a trial on the merits would be conducted if a class were certified." *Madison v. Chalmette Refining, L.L.C.*, 637 F.3d 551, 555 (5th Cir. 2011) (quotation omitted); *see also Angell*, 67 F.4th at 739. Accordingly, a court must examine the elements of the underlying cause of action to "identify the substantive issues that will control the outcome, assess which issues will predominate, and then determine whether the issues are common to the class." *Haley v. Merial, Ltd.,* 292 F.R.D. 339, 353 (N.D. Miss. 2013) (citing *Erica P. John Fund, Inc. v. Halliburton Co*., 563 U.S. 804, 809 (2011); *In re Wilborn*, 609 F.3d 748, 755 (5th Cir. 2010)). Predominance should be considered on a claim-by-claim basis. *Prantil*, 986 F.3d at 577. Further, a court "must respond to the defendants' legitimate protests of individualized issues that preclude class treatment." *Id.* at 578 (quotation omitted). Predominance is a more demanding test than commonality, but "[p]laintiffs cannot satisfy Rule 23(b)(3)'s predominance requirement without satisfying Rule 23(a)'s commonality requirement." *Ahmad*, 690 F.3d at 702.

The superiority element of Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To conduct this inquiry, a court must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication," while considering whether a class action would be more manageable than alternatives, and how the manageability concerns compare with the other advantages or disadvantages of a class action. *Earl v. Boeing Co.*, 2021 WL 4034514, at *39 (E.D. Tex. Sept. 3, 2021) (quotations omitted).

Plaintiffs argue that common issues predominate because all putative class members lived in the same apartment complex under common ownership and management and they allege that Defendants failed to perform obligations regarding common areas, maintenance, and facilities, that were contained in the standard-form lease agreement.[49] Plaintiffs emphasize that they are not seeking divergent damages for personal injury claims.[50] Further, Plaintiffs contend that their warranty claims stem from the same conditions of the property.[51] Plaintiffs submit that a trial of the case would involve calling Defendants (and their representative), Plaintiffs (and perhaps other class members), and experts on liability and damages to testify about the common issues of fact and to resolve common issues of law, such as the obligations of Defendants under the standard-form lease agreement.[52] They contend that there is no need to do a unit-by-unit assessment of the property because their breach-of-contract/warranty claims are limited to the common areas, facilities, and appurtenances.[53] Finally, Plaintiffs argue that proceeding as a class is superior because each individual class member has a comparatively small amount of money at issue, making it unlikely that they would file individual actions; discovery has commenced in this action; the apartment complex lies in this district and there is no evidence of a related suit having commenced in any other district; and there are no choice-of-law issues and managing the class action would not be particularly difficult in any other respect.[54]

In opposition, Defendants argue that Plaintiffs cannot satisfy the predominance requirement because, say Defendants, Plaintiffs failed to show commonality.[55] Defendants further argue that the putative class members' claims need to be individually investigated to determine

---

[49] R. Doc. 99-1 at 36.
[50] *Id.*
[51] *Id.* at 36-37.
[52] *Id.* at 37.
[53] *Id.*
[54] *Id.* at 37-38.
[55] R. Doc. 105 at 20.

which alleged defects they encountered and to what degree.[56] According to Defendants, each putative class member was likely affected in a different way and to a different extent by Defendants' alleged conduct, and each unit would have to be inspected to ascertain each plaintiff's damages.[57] Finally, Defendants argue that a class action is not the superior method for proceeding here because the putative class members' claims are individualized, meaning that the trial would devolve into separate mini-trials.[58]

      Plaintiffs have shown that common questions of fact and law predominate over questions affecting individual members in this litigation and that proceeding as a class action is superior. Plaintiffs limit this action to breach-of-contract/warranty claims regarding common areas of the apartment complex and services owed in common to all putative class members under the standard-form lease. Defendants' alleged liability for the breaches is classwide, as is the determination of damages, whether it be a full or partial reimbursement of the rent the class members paid. Such damages are capable of measurement on a classwide basis by applying the proportion of recovery determined to be appropriate to the amount of rent paid by each class member. Further, superiority is satisfied because the putative plaintiffs' losses are relatively small and requiring each individual claimant to bring his or her claims separately would waste limited resources, would increase the overall cost of litigation, may result in inconsistent outcomes, and would likely result in many claims being abandoned.

---

[56] *Id.* at 21.
[57] *Id.* at 21-22.
[58] *Id.* at 23.

### III.     CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs' motion for class certification (R. Doc. 99) is GRANTED.

IT IS FURTHER ORDERED that the following class is CERTIFIED:

All natural persons who both leased and resided at a Parc Fontaine apartment unit owned by any of the Defendants at any time during the period from December 1, 2018, to the present on whose behalf any Defendant was paid rent and who was thus subject to uninhabitable conditions in the common areas, common facilities, and common appurtenances based on Defendants' failure to maintain and provide such common areas, facilities, and appurtenances.  This class excludes Defendants, their affiliates, employees, officers and directors, and the judges assigned to this case.[59]

IT IS FURTHER ORDERED that Plaintiffs are appointed as class representatives and their attorneys are appointed as class counsel.

New Orleans, Louisiana, this 26th day of March, 2025.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[59] This class definition is the alternative proposed by Plaintiffs with the following changes: the word "both" is inserted before "leased and resided" in the first line to make it clear that the class does not include the set of lessees along with a larger set of residents, but it limited to lessee residents; and the phrase "who was thus subject to" is substituted for the word "experienced" in the third line to make it clear that putative class members are not required to prove their harms in order to be members of the class, but are limited to a readily ascertainable class alleging that their injuries arose from the claimed deficiencies in the apartment complex's common areas, facilities, and appurtenances.