UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALVIN HILLS, *et al.*                              CIVIL ACTION

VERSUS                                             NO. 23-5740

PAC HOUSING GROUP, LLC, *et al.*                   SECTION M (4)

## ORDER & REASONS

Before the Court are cross-motions for summary judgment filed by plaintiffs Alvin Hills, Donnell Matlock, Jack Martin, and Debra Jackson (collectively, "Plaintiffs")[1] and defendants PAC Housing Group, LLC ("PAC"), MOF Parc-Fontaine, LLC ("Parc-Fontaine LLC"), MOF-Preservation of Affordability Corp. ("MOF-Preservation"), Ministry Outreach Foundation ("The Foundation"), and Richard Hamlet (collectively, "Defendants").[2]  The parties respond in opposition to each other's motions,[3] and reply in further support of their own positions.[4]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

## I.    BACKGROUND

This case involves a class action brought by current and former tenants against the owners and property managers of the Parc Fontaine apartment complex for damages caused by the Defendants' alleged failure to provide adequate common facilities.[5]  Parc Fontaine was built in

---

[1] R. Docs. 214; 217.

[2] R. Docs. 215; 280.  Hamlet's summary-judgment motion (R. Doc. 280) adopts Defendants' motion (R. Doc. 215) as it applies to him.  Thus, Hamlet's motion and related filings need not be discussed separately from the discussion of Defendants' motion for summary judgment.

[3] R. Docs. 229; 238; 239; 281.

[4] R. Docs. 247; 248; 250; 282.

[5] R. Doc. 57.  Plaintiffs allege that the Defendants operated as a single business enterprise with: common offices, leadership, employees, and identity of ownership; excessive fragmentation; centralized accounting; unified

1970 and consists of approximately 37 buildings containing a total of 702 apartment units that range in size from 600 square feet to almost 2,000 square feet.[6]  The property has common areas and facilities, including "swimming pools [six of them], breezeways, courtyards, parking areas, purported fitness facilities, and a clubhouse/leasing office."[7]  The property is surrounded by a fence with a gated entrance.[8]  During the class period, the property was owned by Parc-Fontaine LLC and MOF-Preservation.[9]

In their amended complaint, Plaintiffs allege that they all signed the same standard-form lease agreement that required Defendants to provide certain amenities, such as reasonably clean common areas, water, trash removal, wastewater, and pest control, and to maintain the fixtures, furniture, hot water system, and HVAC equipment.[10]  Plaintiffs further allege that Defendants breached the standard-form lease agreement by failing to maintain the common areas and amenities of the apartment complex, including, but not limited to, pools, gates, laundry rooms, gyms, mailboxes, lighting, trash removal, fire alarms, and elevators.[11]  They also allege that Defendants failed to provide pest control and functioning administrative support.[12]

The Court certified the following class:

All natural persons who both leased and resided at a Parc Fontaine apartment unit owned by any of the Defendants at any time during the period from December 1, 2018, to the present on whose behalf any Defendant was paid rent and who was thus subject to uninhabitable conditions in the common areas, common facilities, and common appurtenances based on Defendants' failure to maintain and provide such common areas, facilities, and appurtenances.  This class excludes Defendants,

---

administrative control; and having caused the incorporation of each other.  *Id.* at 24-28.  They also allege that Defendants operate as Hamlet's alter ego.  *Id.* at 28-36.

[6] R. Doc. 214-1 at 4 (citing R. Docs. 101-2; 100-8).

[7] *Id.* (citing R. Doc. 101-2).

[8] *Id.* (citing R. Docs. 100-3; 100-6).

[9] *Id.* at 2.

[10] R. Doc. 57 at 36-38.

[11] *Id.* 17-24, 38-50, 54-59.

[12] *Id.*

their affiliates, employees, officers and directors, and the judges assigned to this case.[13]

Plaintiffs assert several theories of liability, including breach of contract for Defendants' failure to perform obligations under the lease, breach of warranty of suitability, breach of warranty against vices and defects, negligent or intentional misrepresentation, aiding and abetting negligent or intentional misrepresentation (against Hamlet), and unjust enrichment.[14]  They also ask for a declaratory judgment that Defendants violated the terms of the lease regarding safe and healthy housing and legal regulations governing safe and healthy housing, including, but not limited to, regulations of the United States Department of Housing and Urban Development ("HUD").[15] Plaintiffs claim that they "suffered financial losses in the form of paying rent for apartment units and apartment facilities that were inadequately provided," and they seek as damages the "[r]eturn of all rent money or in the alternative return of part of rent money and consequential damages."[16] Plaintiffs and Defendants filed motions for summary judgment on various issues that will be addressed in turn.[17]

## II.    LAW & ANALYSIS

### A. Legal Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[13] R. Doc. 108.

[14] R. Doc. 57 at 54-60.  In their motion for summary judgment on lease-related claims, Plaintiffs dismiss their unjust enrichment claim.  R. Doc. 214-1 at 3.  Accordingly, that claim is DISMISSED WITH PREJUDICE, and the Court will not address Defendants' motion for summary judgment on Plaintiffs' unjust enrichment claim.  *See* R. Doc. 215.

[15] R. Doc. 57 at 61-63.  In their motion for summary judgment on lease-related claims, Plaintiffs dismiss their declaratory judgment claim related to HUD regulations.  R. Doc. 214-1 at 3.  Accordingly, that claim is DISMISSED WITH PREJUDICE, and the Court will not address Defendants' motion for summary judgment on Plaintiffs' declaratory judgment claim related to HUD violations.  *See* R. Doc. 215.

[16] R. Doc. 57 at 63.

[17] R. Docs. 214; 215; 217; 280.

any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*,

572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

## B. Lease-Related Claims

Plaintiffs move for summary judgment on what they call "lease-related claims."[18] Specifically, Plaintiffs argue that there are no disputed issues of material fact preventing a finding that Defendants[19] violated the warranty of suitability, violated the warranty against vices and defects, and otherwise failed to perform their obligations under the lease.[20] In addition, Plaintiffs

---

[18] R. Doc. 214.
[19] Plaintiffs acknowledge that only two defendants – Parc-Fontaine LLC and MOF-Preservation – were the lessors or owners of the property during the relevant period and that the liability of the other Defendants on the lease-related claims depends upon whether Plaintiffs are able to pierce the corporate veil. R. Doc. 214-1 at 2.
[20] *Id.* at 1-2.

"seek a declaratory judgment declaring their rights under the explicit terms of their lease agreements and their legal relationship with the lessors."[21]  Alternatively, Plaintiffs ask that the Court issue summary judgment "establishing the obligations and duties arising under the lease agreements and implied warranties, leaving the question of breach for trial and/or damages for trial."[22]  Plaintiffs contend that their deposition testimony describing the conditions that existed at the property at various times during the class period, along with evidence of Defendants' violations of City of New Orleans codes and the expert report of Nicholas Heybeck, PE, is sufficient to prove that the common areas, facilities, and services at the property were inadequate so as to constitute breaches of the warranty of suitability, the warranty against vices and defects, and Defendants' obligations under the lease.[23]  For example, Plaintiffs point to poor maintenance in the laundry rooms, mail areas, swimming pools, and parking lots; holes in the fences and parking lot; a broken front gate; broken elevators; shutdown fitness centers; structurally unsafe buildings causing leaking and sewage overflows; trash in the hallways; and insect and rodent infestations.[24]  Plaintiffs seek return of all the rent paid on their behalf during the class period.[25]  Plaintiffs also argue that, because contract interpretation is a question of law, the Court should enter a declaratory judgment holding that the lease required the property's owners to (1) keep common areas reasonably clean, (2) maintain fixtures and equipment, (3) comply with safety, sanitation, and fair housing law, (4) make reasonable repairs, (5) provide certain utilities, specifically water, wastewater, trash, and pest control services, (6) maintain a healthy and safe environment, and (7) provide mailbox keys and additional building access devices at no additional cost.[26]  Plaintiffs further assert that "this

---

[21] R. Doc. 214 at 1.
[22] *Id.* at 2.
[23] R. Doc. 214-1 at 8-21, 24-27.
[24] *Id.* at 8-16, 24-27.
[25] *Id.* at 28.
[26] *Id.* at 22-23.

Court should declare the obligations of the lessors to include provision of healthy, safe, and sanit[ar]y common areas, common facilities, and common appurtenances to the lessees/Class Members" and the rights of the lessees/class members to use and enjoy such things, along with a facility suitable for residential living, in compliance with the city code, and free from vices and defects.[27]

In opposition, Defendants argue that Plaintiffs have not proved their breach-of-contract and -warranty claims because there are disputed issues of material fact that the jury must decide.[28] Specifically, Defendants point out that the Court cannot make classwide determinations on the limited evidence presented by Plaintiffs where the conditions they describe existed at discrete points in time over the length of the class period in a large apartment complex encompassing numerous buildings, common areas, facilities, and appurtenances.[29]   Additionally, Defendants argue that many of the conditions Plaintiffs describe were repaired or else were not present throughout the entire class period.[30]  Defendants further contend that the Court cannot determine that the lease was breached on this summary-judgment record because this determination turns on facts not yet established like conformity with the lease's reporting procedures and requirements for reasonable cleanliness, substantial compliance with laws, and the reasonableness of repairs.[31] Defendants also insist that only Parc-Fontaine LLC entered into the lease agreements and, thus, it is the only defendant that can be held liable for the alleged breaches.[32]   And Defendants assert that, because the class claims are limited to common areas, any evidence Plaintiffs presented regarding issues within their individual apartments is irrelevant and should be disregarded.[33]  They

---

[27] *Id.* at 23.
[28] R. Doc. 238 at 1-2, 6-10.
[29] *Id.* at 7-8, 10.
[30] *Id.* at 8, 10.
[31] *Id.* at 8-11.
[32] *Id.* at 6.
[33] *Id.* at 2.

also observe that they have filed a motion *in limine* objecting to the evidence regarding city code violations.[34]  As to Plaintiffs' damages claim, Defendants argue that Plaintiffs are not entitled to a return of the entire amount of rent paid, but rather, they are limited to the amount attributable to the use and upkeep of the common areas, lest they receive a windfall.[35]  With respect to Plaintiffs' request for a declaratory judgment, Defendants argue that the claim is improper because it is duplicative of Plaintiffs' breach-of-warranty and -contract claims.[36]

Plaintiffs reply, reasserting that they have submitted enough evidence to prevail on their breach-of-warranty and -contract claims.[37]  They contend that a classwide determination on breach can be made because, although different conditions existed at different times, some sort of uninhabitable condition existed at all times during the class period.[38]  Plaintiffs also argue that the evidence, particularly the code violations, show that Defendants failed to make reasonable repairs or maintain substantial compliance.[39]  Similarly, Plaintiffs say that the method of informing Defendants of any particular issue is immaterial due to the cited code violations.[40]  They further urge that all Defendants can be held liable if they operated as a single business enterprise or Hamlet's alter ego and that they should recover all of the rents paid because Defendants breached their lease obligations in bad faith.[41]  While Plaintiffs acknowledge that a court can decline to

---

[34] *Id.* at 2-3.  This Court has ruled on that motion *in limine* stating that it will defer to trial the question whether to exclude such evidence and will rule on contemporaneous objections made to such evidence as it is offered at trial.  R. Doc. 279.

[35] R. Doc. 238 at 10-11.

[36] *Id.* at 4-6.  In their own motion for summary judgment, Defendants argue that Plaintiffs' declaratory judgment claim should be dismissed as duplicative.  *See* R. Doc. 215-1 at 41-44.  The Court will address that argument later in this Order & Reasons.

[37] R. Doc. 247 at 1-7.

[38] *Id.* at 5.

[39] *Id.* at 6.

[40] *Id.*

[41] *Id.* at 3-4, 6-7.

decide a redundant declaratory judgment claim, they assert that declaring their rights as requested is appropriate here.[42]

Having considered the parties' contentions, the record, and the applicable law, the Court finds that entering summary judgment in Plaintiffs' favor on the lease-related claims is inappropriate because there are disputed issues of material fact pertaining to the condition of the property throughout the full extent of the class period and whether Defendants substantially complied with the lease. The Court notes that it has deferred to trial a determination whether the code enforcement evidence on which Plaintiffs heavily rely is admissible. On the whole, whether Defendants breached the lease or warranties – the ultimate questions in this case – must be determined by the jury after the evidence is presented at trial. Further, as explained below, this Court finds that Plaintiffs' declaratory judgment claim should be dismissed as duplicative of their breach-of-contract and -warranty claims. Accordingly, Plaintiffs' motion for summary judgment on the lease-related issues is DENIED.

## C.  Single Business Enterprise

Plaintiffs seek a summary-judgment ruling that the defendant entities, *i.e.*, all Defendants except Hamlet, operated as a single business enterprise.[43] They argue that the defendant entities "have identity or substantial identity of ownership," share common officers, directors, and employees, operate in tandem, have intertwining financing, share offices, have joint meetings, and utilize the same accountants.[44] In sum, Plaintiffs contend that the defendant entities satisfy most

---

[42] *Id.* at 2-3.
[43] R. Doc. 217.
[44] R. Doc. 217-1 at 3-7 (quote at 3).

9

of the 18 factors set forth in *Green v. Champion Insurance Co.*, 577 So. 2d 249 (La. App. 1991), which courts consider as the test for determining the existence of a single business enterprise.[45]

In opposition, Defendants argue that Plaintiffs motion should be denied because they failed to put forth clear-and-convincing evidence that the *Green* test is satisfied.[46]  Defendants then explain that, in their view, they are separate business entities and any commonalties they share do not mean that they operate as a single business enterprise.[47]  Indeed, Defendants argue that summary judgment in their favor on this issue is warranted.[48]

Plaintiffs reply in support of their own motion and respond in opposition to Defendants' motion for summary judgment on this issue, reiterating that the facts, in their view, clearly and convincingly show that Defendants operated as a single business enterprise.[49]

The single-business-enterprise doctrine is "a theory for imposing liability where two or more business entities act as one." *Brown v. ANA Ins. Grp.*, 994 So. 2d 1265, 1266 n.2 (La. 2008) (citing *Green*).  Generally, under this doctrine, "[w]hen corporations integrate their resources in operations to achieve a common business purpose, each business may be held liable for wrongful acts done in pursuit of that purpose."  *Id*.  A court can disregard the concept of corporate separateness "when a corporation is so organized and controlled as to make it merely an instrumentality or adjunct of another corporation."  *Green*, 577 So. 2d at 257.  "If one corporation is wholly under the control of another, the fact that it is a separate entity does not relieve the latter

---

[45] *Id.* at 8-13.  Plaintiffs state that La. R.S. 12:1705, which became effective on August 1, 2024, "legislatively abrogated the use of certain *Green* factors in making [single-business-enterprise] determinations." *Id.* at 9.  However, Plaintiffs acknowledge that the statute has been held to "appl[y] prospectively" and thus is inapplicable here.  *Id.* (citing *Hosp. Serv. Dist. No. 1 of the Par. of St. James v. Hosp. Serv. Dist. No. 3 of the Par. of Lafourche*, 427 So. 3d 297, 307 (La. App. 2025), *writs denied*, 428 So. 3d 268, 269 (La. 2026)).  Because both parties argue the case under the *Green* factors without reference to La. R.S. 12:1705, this Court will follow suit.
[46] R. Doc. 229 at 1-2.
[47] *Id.* at 3-21.
[48] *Id.*; *see also* R. Docs. 215-1 at 14-31; 248 at 8-14.
[49] R. Docs. 250 at 1-6; 239 at 9-17.

from liability," because "the former corporation is merely an alter ego or business conduit of the latter." *Id.* (citations omitted).

The substance, rather than the form, of the corporate structure is examined to determine whether one entity is an instrumentality or alter ego of another. *Id.* The following 18 factors are considered: identity or substantial identity of ownership (*e.g.*, ownership of sufficient stock to give actual working control); common directors or officers; unified administrative control of entities whose business functions are similar or supplementary; directors and officers of one corporate entity act independently in the interest of that entity; one corporate entity financing another entity or commingling assets; inadequate capitalization; one corporate entity causing the formation or incorporation of another affiliated entity; one corporate entity paying the salaries and other expenses or losses of another entity; a corporate entity receiving no business other than that given to it by its affiliated corporate entities; one corporate entity using the property of another entity as its own; noncompliance with corporate formalities; common employees; services rendered by the employees of one corporate entity on behalf of another entity; common offices; centralized accounting; undocumented transfers of funds between corporate entities; unclear allocation of profits and losses between corporate entities; and excessive fragmentation of a single enterprise into separate corporate entities. *Id.* at 257-58; *see also Rive v. Briggs of Cancun, Inc.*, 82 F. App'x 359, 366-67 (5th Cir. 2003) (referencing *Green*'s 18-factor test). The foregoing "list is illustrative" and not intended to be exhaustive; nor is any one factor dispositive. *Green*, 577 So. 2d at 258. "The party asserting the single-business-enterprise theory must provide clear and convincing evidence that the corporations acted as a single business enterprise." *Cole v. P.S. Fisheries*, 2019 WL 4415261, at *3 (E.D. La. Sep. 16, 2019) (citing *Miller v. Entergy Servs., Inc.*, 913 So. 2d 143, 148 (La. App. 2005)).

11

Because both sides present competing evidence on the single-business-enterprise theory and the Court cannot make credibility determinations or weigh evidence on a motion for summary judgment, their opposing motions on this issue must be denied so that the jury can weigh the evidence and make a judgment concerning this fact-intensive inquiry. *See Becnel v. Lamorak Ins. Co.*, 2022 WL 2116896, at *6 (E.D. La. June 13, 2022) (denying summary judgment on single-business-enterprise theory because no one *Green* factor is dispositive and the court cannot weigh evidence or make credibility determinations on a motion for summary judgment).

### D. Alter Ego

Defendants argue that they are entitled to a finding that the defendant entities were not Hamlet's alter egos and, thus, Hamlet is not personally liable to Plaintiffs.[50]  According to Defendants, at all times during the class period, the defendant entities existed as a separate corporation (MOF-Preservation), separate limited liability companies (PAC and Parc-Fontaine LLC), or a separate non-profit corporation (The Foundation), and Hamlet was never a member or shareholder of any of them, meaning that Hamlet legally cannot be held responsible for the companies' actions.[51]  Defendants explain that "[a]t all pertinent times, MOF-[Preservation] has been the sole member of PAC … and Parc-Fontaine, LLC, [T]he Foundation has been the sole member of MOF-[Preservation, and] The Foundation is a 501(c)(3) corporation with a board of directors but no shareholders."[52]  Defendants further argue that there is no evidence of commingling of corporate assets and shareholder or member funds, the entities followed all statutory formalities in incorporating and transacting business, they are adequately capitalized,

---

[50] R. Doc. 215-1 at 7-14.
[51] *Id.* at 8-10.
[52] *Id.* at 9.

Hamlet did not deplete their assets, they maintain bank accounts separate from Hamlet's, and they hold regular director and member meetings.[53]

In opposition, Plaintiffs argue that it is disputed whether Hamlet is an owner of Parc-Fontaine LLC because he is listed as such on state bond commission documents but denied ownership in his deposition testimony.[54] Plaintiffs further argue that, even without this disputed issue of material fact, summary judgment is not warranted because the evidence, in their view, shows that Hamlet was an officer or director of the entities.[55] While Plaintiffs concede that the Louisiana supreme court has not explicitly held that the alter-ego doctrine applies to officers and directors, they contend that this Court should make an *Erie* guess that "the Louisiana [s]upreme [c]ourt would almost certainly apply the alter ego doctrine to officers and directors, just as it has done to shareholders and members," because persuasive authority supports such a conclusion, especially considering that the doctrine is "designed to avoid injustice."[56] And, say Plaintiffs, the evidence supports an alter-ego finding against Hamlet because there is evidence that all of the factors for the theory's application existed during the class period.[57]

Defendants reply, arguing that an *Erie* guess is unwarranted because Louisiana courts and federal courts applying Louisiana law have held that the alter-ego theory is reserved to shareholders and members of the subject corporation or limited liability company.[58] Moreover, Defendants argue that, even if Hamlet could be liable without being a shareholder or member of the entities, Plaintiffs do not prove by clear-and-convincing evidence that exceptional circumstances justify applying the alter-ego doctrine here.[59]

---

[53] *Id.* at 10-14.
[54] R. Doc. 239 at 3.
[55] *Id.* at 3-9.
[56] *Id.* at 5-6.
[57] *Id.* at 7-9.
[58] R. Doc. 248 at 4.
[59] *Id.* at 4-8.

Generally, in Louisiana "corporations are distinct legal entities, separate from the individuals who comprise them, and … the shareholders are not liable for the debts of the corporation." *Riggins v. Dixie Shoring Co.*, 590 So. 2d 1164, 1167 (La. 1991) (citations omitted). However, a "court may ignore the corporate fiction and hold the individual shareholders liable … where the corporation is found to be simply the 'alter ego' of the shareholder," which "usually involves situations where fraud or deceit has been practiced by the shareholder acting through the corporation." *Id.* at 1168 (citations omitted). The *Riggins* court crafted these rule statements this way because the case only involved the potential liability of *shareholders* under the alter-ego doctrine; yet, the court later made reference to the potential for personal liability of officers and directors when describing the narrowness of the doctrine. *Id.* at 1168-69. Indeed, the Fifth Circuit has recognized that "[u]nder Louisiana law, the corporate veil may be pierced under the 'alter ego' doctrine, where the corporate entity is disregarded to such an extent that the affairs of the corporation are indistinguishable from the affairs of the ***officer or director***" or where "a ***director or officer*** … has practiced fraud upon any person." *Tubos de Acero de Mex., S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 478 (5th Cir. 2002) (emphasis added); *see also La. Newpack Shrimp, Inc. v. Ocean Feast of China, Ltd.*, 2021 WL 516631, at *8 (E.D. La. Feb. 11, 2021) (citing *Tubos de Acero*).

Louisiana courts have determined that the same veil-piercing requirements regarding corporations also apply to limited liability companies. *ORX Res., Inc. v. MBW Expl., L.L.C.*, 32 So. 3d 931, 935 (La. App. 2010) (holding that court can pierce corporate veil of LLC under alter-ego doctrine); *Prasad v. Bullard*, 51 So. 3d 35, 40 (La. App. 2010) (holding that court can pierce corporate veil to reach the alter ego of LLC and hold member liable for debts of LLC). Under Louisiana law, the veil of protection afforded by the LLC form may be pierced if in fact the limited

14

liability company was operating as the alter ego of its members or if its members were committing fraud or deceit on third parties. *Hollowell v. Orleans Reg'l Hosp.*, 1998 WL 283298, at \*10 (E.D. La. May 29, 1998), *aff'd*, 217 F.3d 379 (5th Cir. 2000) (holding that the alter-ego question was for the jury).

"The alter ego doctrine, like all variations of piercing the corporate veil doctrine, is reserved for exceptional cases. The doctrine applies only if (1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 447 F.3d 411, 414 (5th Cir. 2006) (quotation and internal citation omitted). "Louisiana courts are reluctant to hold a shareholder, officer, or director of a corporation personally liable for corporate obligations, in the absence of fraud, malfeasance, or criminal wrongdoing." *Riggins*, 590 So. 2d at 1168.

"To prove alter ego liability, a plaintiff must 'prove that the shareholders[, members, offices, or directors] disregarded the corporate entity to such an extent that it ceased to become distinguishable from themselves.'" *Medve Energy Ventures LLC v. Warhorse Oil & Gas LLC*, 2018 WL 7051038, at \*6 (W.D. La. Nov. 21, 2018) (quoting *Riggins*, 590 So. 2d at 1168), *adopted*, 2019 WL 303122 (W.D. La. Jan. 17, 2019). In determining whether to apply the alter-ego theory and pierce the corporate veil, courts consider evidence of: "1) commingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings." *Riggins*, 590 So. 2d at 1168. The foregoing list is illustrative, not exclusive, and a court must consider the totality of the circumstances when deciding whether to pierce the corporate veil. *Id*. at 1168-69.

15

Because it is clear that courts applying Louisiana law have extended the alter-ego doctrine to reach officers and directors, no *Erie* guess is needed, and the Court will not dismiss Plaintiffs' alter-ego claim against Hamlet on the basis that he was never a shareholder of any of the defendant entities. Moreover, because both sides put forth competing evidence on the alter-ego theory and the Court cannot make credibility determinations or weigh evidence on a motion for summary judgment, Defendants' motion must be denied on this issue so that the jury can weigh the evidence and make its own determination in regard to this fact-intensive inquiry.

**E. Plaintiffs' Claims Against Non-Lessors of the Subject Apartment Complex**

Defendants argue that those of their number who have never been privy to a lease agreement with Plaintiffs – all except Parc-Fontaine LLC – cannot be held liable for breach of contract, breach of warranty of suitability, or breach of warranty against vices and defects because those claims all presuppose the existence of a lease agreement.[60] In opposition, Plaintiffs argue that there is a genuine issue of material fact as to the identity of the lessor because Hamlet responded in discovery that the following entities leased units to the class members during the class period: "'MOF-Parc Fontaine, LLC, GMF-Parc Fontaine, LLC, MOF-Preservation of Affordability, Corp, and GMF-Preservation of Affordability Corp.'"[61] Plaintiffs further argue that the single-business-enterprise and alter-ego theories operate here to impose liability on all of the defendants, including Hamlet, whether or not they were the actual lessors.[62] Defendants reply, arguing that although there is a discrepancy in their discovery responses, they have provided evidence to Plaintiffs that Parc-Fontaine LLC was the only lessee, meaning that no other party had privity of contract with Plaintiffs and, thus, none of them can be held liable for these claims.[63]

---

[60] R. Doc. 215-1 at 31-32.
[61] R. Doc. 239 at 17 (quoting R. Doc. 214-2).
[62] *Id.* at 17-18.
[63] R. Doc. 248 at 14-16.

16

While Defendants agree that they can all be held liable if Plaintiffs prevail on the single-business-enterprise and alter-ego theories, they point out that Plaintiffs allege that each defendant breached the contract and warranties outside of those theories, and those claims should be dismissed.[64]

Having reviewed the parties' memoranda, the record, and the applicable law, the Court agrees with Defendants that Parc-Fontaine LLC was the only lessee during the class period and thus the only entity that can be held liable for Plaintiffs' breach-of-contract and -warranty claims, in the absence of an application of the single-business-enterprise and alter-ego theories. These kinds of claims – breach of contract and breach of warranties – require privity of contract. *See Go-Graphics of New Orleans, LLC v. Reg'l Transit Auth.*, 430 So. 3d 552, 555 (La. App. 2025) ("Generally, a cause of action for breach of contract cannot be asserted in the absence of privity of contract."), *writ denied*, 429 So. 3d 726 (La. 2026); *see also* La. Civ. Code art. 2696 ("The **lessor** warrants the lessee that the thing is suitable for the purpose for which it was leased and that it is free of vices or defects that prevent its use for that purpose." (emphasis added)); *Johnson v. Lull Enters., Inc.*, 663 So. 2d 403, 407-08 (La. App. 1995) (explaining that the warranty obligations set forth in the predecessor to article 2696 arise from the lease contract and are restricted to the lessor/lessee relationship and do not apply to third parties). As such, Defendants' motion is GRANTED as to any breach-of-contract and -warranty claims alleged against PAC, MOF-Preservation, The Foundation, and Hamlet that do not depend on the application of the single-business-enterprise and alter-ego theories, and those claims are DISMISSED WITH PREJUDICE. However, because this Court has denied summary judgment on the single-business-enterprise and alter-ego theories, Defendants' motion for summary judgment is DENIED as to dismissing the

---

[64] *Id.* at 15-16.

breach-of-contract and -warranty claims against PAC, MOF-Preservation, The Foundation, and Hamlet arising from the application of these theories.

### F. Limiting Plaintiffs' Recovery for Their Breach-of-Contract Claim

Defendants argue that the Court should limit Plaintiffs' recovery on their breach-of-contract claim to comport with the Court's ruling on class certification; in this way, Plaintiffs should be limited to recovering only the portion of the rents paid out of pocket for use of common areas, amenities, and facilities.[65] Defendants argue that such a limitation is warranted because "the class certified by the Court is limited to liability for damages arising from failure to maintain those components of [the] Parc Fontaine [apartment complex]."[66] Defendants say that allowing Plaintiffs to recover the full amount of rent, regardless of whether it was paid by government assistance or pertained to their individual units as opposed to the common areas, would result in a windfall to Plaintiffs.[67]

In opposition, Plaintiffs argue that their damages should not be limited by the class definition because Defendants breached the lease contracts in bad faith, which is a question of fact reserved for the jury.[68] Plaintiffs contend that "Defendants acted intentionally and with malice in their failure to repair the common areas" by taking years to respond to maintenance complaints and code violations.[69] According to Plaintiffs, the condition of the common areas completely deprived them of the use and enjoyment of their units, thereby entitling them to a return of all rents paid, regardless of who paid it and whether any portion of the rent is attributable to their individual

---

[65] R. Doc. 215-1 at 33.
[66] *Id.*
[67] *Id.* at 33-36.
[68] R. Doc. 239 at 18-22.
[69] *Id.* at 19-20 (quote at 19).

units.[70]  Further, Plaintiffs argue that they can recover all the rents paid under tort or breach-of-warranty theories because they were promised, but did not receive, habitable living facilities.[71]

Defendants reply, arguing that Plaintiffs' recovery on their breach-of-contract claim must be limited to rents paid for use of the common areas, facilities, and appurtenances because that is what is encompassed within the class definition.[72]  To allow further recovery on that claim, say Defendants, would "contradict the limited scope of the class and Louisiana law by allowing a windfall recovery."[73]

To succeed on a breach-of-contract claim under Louisiana law, a plaintiff must prove: "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 68 So. 3d 1099, 1108-09 (La. App. 2011).  Under the Louisiana Civil Code, "[a]n obligor is liable for the damages caused by his failure to perform a conventional obligation.  A failure to perform results from nonperformance, defective performance, or delay in performance." La. Civ. Code art. 1994.  "Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived." *Id.* art. 1995.  When an obligor acts in bad faith, it "is liable for all the damages, foreseeable or not, that are a direct consequence of [its] failure to perform." *Id.* at 1997.

"Louisiana has embraced the contract damages principle of 'expectation' damages,'" under which "the general purpose of contract damages is not to punish breaching parties or enrich non-breaching parties, but rather to produce the same result as would have occurred if there was no breach." *In re Bankston*, 749 F.3d 399, 403 (5th Cir. 2014) (citing 6 LA. CIV. L. TREATISE, LAW

---

[70] *Id.* at 20.

[71] *Id.* at 21-22.  Defendants' motion is limited to Plaintiff's breach-of-contract claim.  *See* R. Doc. 215-1 at 33-36.  As such, the Court will not address what damages Plaintiffs can recover under other legal theories.

[72] R. Doc. 248 at 19.

[73] *Id.*

OF OBLIGATIONS § 14.3 (2d ed.)).  "As stated by the Louisiana [s]upreme [c]ourt, the calculation of damages should place the non-breaching party 'in the same position he would have been in' had the contract been fulfilled."  *Id.* (quoting *Gibbs Constr. Co. v. Thomas,* 500 So. 2d 764, 770 (La.1987)).  Moreover, "[a] court must take 'great care  to ensure that the plaintiff is not actually placed in a *better* position than he would have attained had the contract been performed.'"  *Id.* (alteration omitted; emphasis in original) (quoting *Barnco Int'l, Inc. v. Arkla, Inc.,* 684 So. 2d 986, 999-1000 (La. App. 1996)).

Here, the class definition frames the measure of damages available to Plaintiffs.  The class includes "persons who both leased and resided at a Parc Fontaine apartment unit" during the class period and "on whose behalf any Defendant was paid rent and who was thus subject to uninhabitable conditions in the common areas, common facilities, and common appurtenances based on Defendants' failure to maintain and provide such common areas, facilities, and appurtenances."[74]  Class certification depended upon the damages being limited to the rent paid for the maintenance of common areas because issues involving individual apartments would have destroyed commonality and typicality.[75]  Thus, allowing Plaintiffs to recover the entire amount of rent would result in a windfall beyond the class definition.[76]  Accordingly, Defendants' motion for

---

[74] R. Doc. 108.

[75] *See id.*

[76] Defendants also seek to exclude from the recoverable damages any portion of the rents paid by government assistance, while Plaintiffs insist that the class definition allows for the recovery of all rents paid on their behalf, including those paid by government assistance.  When the Court crafted the class definition, it did not contemplate rents being paid on the tenants' behalf by government assistance.  Instead, the Court was considering that rent could have been gratuitously paid on a resident's behalf by a family member or friend.  The present summary-judgment record does not explain how government rental assistance operated in this case, how many class members are affected, how much of their rent was paid by government assistance, or how Plaintiffs would gain an impermissible windfall if they were permitted to recover rents paid for common areas by government assistance.  Nor do the legal authorities cited by the parties establish whether or not the government assistance received by Plaintiffs to pay their rent should be considered a part of the loss they sustained.  As such, the Court will allow the parties to file cross-motions for summary judgment on this single, narrow issue despite the expiration of the scheduling order's dispositive motion deadline.  Any such motions shall be filed and served in sufficient time to permit hearing thereon no later than September 17, 2026.  Memoranda in support of such motions shall be limited to five (5) pages in length and must contain legal authority.  In the meantime, Defendants' present motion for summary judgment is DENIED as to

summary judgment is GRANTED as to limiting Plaintiffs' breach-of-contract damages to that portion of the rents attributable to common areas, amenities, and facilities.

A bad faith finding would not alter this conclusion because the "damages that are a ***direct*** consequence of [the] failure to perform" lease obligations associated with the common areas, amenities, and facilities would still be limited to that portion of the rents attributable to such common areas, amenities, and facilities. But any bad-faith damages cannot sweep so broadly as to reach those damages that would have been recoverable only upon an individualized showing by each class member of injuries associated with their respective apartment units – and, so, fall outside the ambit of the certified class.

### G. Plaintiffs' Individual Breach-of-Contract Damages

Defendants argue that, if Plaintiffs' breach-of-contract damages are limited to out-of-pocket rents paid for use of the common areas, facilities, and appurtenances, Plaintiffs cannot prove those amounts.[77] Defendants say that Plaintiffs have not identified a witness who can meaningfully delineate what portion of their rents were for the common areas, facilities, and appurtenances, as distinguished from the portion of their rents for their individual apartment units, which means that the jury would be left to impermissibly speculate as to the amount of damages.[78]

In opposition, Plaintiffs, pointing to the expert report of Nathan B. Abercrombie, argue that they have nonspeculative proof as to the amount of rents paid for the use of the common areas, facilities, and appurtenances.[79] Abercrombie, say Plaintiffs, "provides information on regular industry rental standards for allocation of rental payments to common areas and management

---

excluding from Plaintiffs' breach-of-contract damages any portion of the rent paid on their behalf by government assistance.

[77] R. Doc. 215-1 at 36-37.
[78] *Id.*
[79] R. Doc. 239 at 22-24.

versus individual units, including detailed analysis of 'key factors' affecting such allocations."[80] Plaintiffs observe further that Abercrombie "determined that 35%-40% of Plaintiffs' rental payments were allocated to common services, costs, and operations and provided yearly overpayments by year for the Class Period."[81]  Finally, Plaintiffs contend that there is "evidence of rental amounts broken down by lessee."[82]

Defendants do not reply to this portion of Plaintiffs' opposition.[83]

Having considered the parties' memoranda, the record – particularly Abercrombie's report – and the applicable law, the Court finds that Plaintiffs have submitted enough evidence to overcome summary judgment on this issue.  Accordingly, Defendants' motion for summary judgment on Plaintiffs' lack of evidence to establish breach-of-contract damages is DENIED.

## H. Declaratory Judgment

Defendants argue that Plaintiffs' declaratory judgment claim should be dismissed because it is redundant given their breach-of-contract claim.[84]  Plaintiffs, citing Rule 57 of the Federal Rules of Civil Procedure, contend that the Court should exercise its discretion to enter a declaratory judgment on their breach-of-contract claim notwithstanding that it is redundant.[85]  Defendants reply, arguing that "Rule 57 does not dictate that a declaratory judgment claim is appropriate whenever there is an adequate remedy, nor does it mandate the Court to allow such a claim where it adds nothing to an existing lawsuit."[86]  They also point out that courts often dismiss declaratory judgment claims that are duplicative of breach-of-contract claims.[87]

---

[80] *Id.* at 23 (citing R. Doc. 103-12).
[81] *Id.* at 23-24.
[82] *Id.* at 24.
[83] *See* R. Doc. 248.
[84] R. Doc. 215-1 at 41-44.
[85] R. Doc. 239 at 18.
[86] R. Doc. 248 at 17.
[87] *Id.* at 18.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Rule 57 further states that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." However, courts recognize that "'[t]he Declaratory Judgment Act is an authorization, not a command,' [which provides them with] broad discretion in deciding claims for declaratory relief." *JMC - Tran Props. v. Westchester Surplus Lines Ins. Co.*, 2023 WL 2527168, at *1 (E.D. La. Mar. 15, 2023) (quoting *Smitty's Supply, Inc., v. Hegna*, 2019 WL 1099712, at *2 (E.D. La. Mar. 8, 2019)). As such, "'[c]ourts uniformly dismiss declaratory judgment claims … if they are redundant of the substantive legal claims.'" *Id.* at *2 (quoting *Perry v. H.J. Heinz Co. Brands, LLC*, 2019 WL 2423231, at *3 (E.D. La. June 10, 2019) (collecting cases)). "A declaratory judgment claim is redundant if it 'seeks resolution of issues that will be resolved as a part of the non-declaratory claims in the lawsuit.'" *Id.* (alterations omitted) (quoting *Perry*, 2019 WL 2423231, at *3).

Here, Plaintiffs admit that their declaratory judgment and breach-of-contract claims are redundant. Indeed, they are asking the Court to declare their rights under the lease alleged to have been breached. These issues will necessarily be resolved as part of their breach-of-contract claim, making dismissal of the declaratory judgment claim appropriate. Therefore, Defendants' motion for summary judgment on Plaintiffs' declaratory judgment claim is GRANTED and that claim is DISMISSED WITH PREJUDICE.

### III.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs' motion for summary judgment on lease-related claims (R. Doc. 214) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' motion for summary judgment on the single-business-enterprise doctrine (R. Doc. 217) is DENIED.

IT IS FURTHER ORDERED that Defendants' motions for summary judgment on various issues and claims (R. Docs. 215; 280) are GRANTED as to (1) dismissing any breach-of-contract and -warranty claims alleged against PAC, MOF-Preservation, The Foundation, and Hamlet that do not depend on the application of the single-business-enterprise and alter-ego theories; (2) limiting Plaintiffs' damages on their breach-of-contract claim to that portion of the rents paid attributable to common areas, amenities, and facilities; and (3) dismissing Plaintiffs' declaratory judgment claim, and those claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendants' motions for summary judgment on various issues and claims (R. Docs. 215; 280) are DENIED as to: (1) dismissing Plaintiffs' alter-ego claim; (2) dismissing Plaintiffs' single-business-enterprise claim; (3) dismissing Plaintiffs' breach-of-contract and -warranty claims against PAC, MOF-Preservation, The Foundation, and Hamlet arising from the application of the single-business-enterprise and alter-ego theories; (4) limiting Plaintiffs' breach-of-contract damages to the rents they paid out of pocket for use of common areas, amenities, and facilities; and (5) finding that Plaintiffs lack evidence to establish their breach-of-contract damages.

IT IS FURTHER ORDERED that Plaintiffs' unjust enrichment claim, and their declaratory judgment claim related to HUD regulations, are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 10th day of August, 2026.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE