UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALVIN HILLS, *et al.* | CIVIL ACTION |
| VERSUS | NO. 23-5740 |
| PAC HOUSING GROUP, LLC, *et al.* | SECTION M (4) |

**ORDER & REASONS**

Before the Court are cross-motions for partial summary judgment filed by plaintiffs Alvin Hills, Donnell Matlock, Jack Martin, and Debra Jackson (collectively, "Plaintiffs")[1] and defendants PAC Housing Group, LLC, MOF Parc-Fontaine, LLC ("Parc-Fontaine LLC"), MOF-Preservation of Affordability Corp. ("MOF-Preservation"), Ministry Outreach Foundation, and Richard Hamlet (collectively, "Defendants"), on whether Plaintiffs can recover as damages on their breach-of-contract and breach-of-warranty claims any amounts paid for rent on their behalf by the government as Section 8 rental assistance.[2] The parties respond in opposition to each other's motions,[3] and reply in further support of their own positions.[4] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons, granting Plaintiffs' motion and denying Defendants' motion.

## I. BACKGROUND

This case involves a class action brought by current and former tenants against the owners and property managers of the Parc Fontaine apartment complex for damages caused by the

[1] R. Doc. 287.
[2] R. Doc. 286.
[3] R. Docs. 289; 290.
[4] R. Docs. 292; 293.

Defendants' alleged failure to provide adequate common facilities.[5] Parc Fontaine was built in 1970 and consists of approximately 37 buildings containing a total of 702 apartment units that range in size from 600 square feet to almost 2,000 square feet.[6] The property has common areas and facilities, including "swimming pools [six of them], breezeways, courtyards, parking areas, purported fitness facilities, and a clubhouse/leasing office."[7] The property is surrounded by a fence with a gated entrance.[8] During the class period, the property was owned by Parc-Fontaine LLC and MOF-Preservation.[9]

In their amended complaint, Plaintiffs allege that they all signed the same standard-form lease agreement that required Defendants to provide certain amenities, such as reasonably clean common areas, water, trash removal, wastewater, and pest control, and to maintain the fixtures, furniture, hot water system, and HVAC equipment.[10] Plaintiffs further allege that Defendants breached the standard-form lease agreement by failing to maintain the common areas and amenities of the apartment complex, including, but not limited to, pools, gates, laundry rooms, gyms, mailboxes, lighting, trash removal, fire alarms, and elevators.[11] They also allege that Defendants failed to provide pest control and functioning administrative support.[12]

The Court certified the following class:

> All natural persons who both leased and resided at a Parc Fontaine apartment unit owned by any of the Defendants at any time during the period from December 1,

---

[5] R. Doc. 57. Plaintiffs allege that the Defendants operated as a single business enterprise with: common offices, leadership, employees, and identity of ownership; excessive fragmentation; centralized accounting; unified administrative control; and having caused the incorporation of each other. *Id.* at 24-28. They also allege that Defendants operated as Hamlet's alter ego. *Id.* at 28-36. The parties filed cross-motions for summary judgment on the applicability of the single-business-enterprise and alter-ego doctrines. R. Docs. 215; 217. This Court denied the motions, finding that there are disputed issues of material fact that precluded summary judgment. R. Doc. 284 at 9-16, 23.

[6] R. Doc. 214-1 at 4 (citing R. Docs. 101-2; 100-8).

[7] *Id.* (citing R. Doc. 101-2).

[8] *Id.* (citing R. Docs. 100-3; 100-6).

[9] *Id.* at 2.

[10] R. Doc. 57 at 36-38.

[11] *Id.* 17-24, 38-50, 54-59.

[12] *Id.*

> 2018, to the present on whose behalf any Defendant was paid rent and who was thus subject to uninhabitable conditions in the common areas, common facilities, and common appurtenances based on Defendants' failure to maintain and provide such common areas, facilities, and appurtenances. This class excludes Defendants, their affiliates, employees, officers and directors, and the judges assigned to this case.[13]

Plaintiffs assert several theories of liability, including breach of contract for Defendants' failure to perform obligations under the lease, breach of warranty of suitability, breach of warranty against vices and defects, negligent or intentional misrepresentation, and aiding and abetting negligent or intentional misrepresentation (against Hamlet).[14] Plaintiffs claim that they "suffered financial losses in the form of paying rent for apartment units and apartment facilities that were inadequately provided," and they seek as damages the "[r]eturn of all rent money or in the alternative return of part of rent money and consequential damages."[15] In ruling on Defendants' prior summary-judgment motion on the damages available for Plaintiffs' breach-of-contract claim, this Court held that any such recovery is limited to rent paid for the provision and maintenance of common areas, facilities, and appurtenances.[16] However, the Court found the parties' briefing inadequate to determine whether Plaintiffs' potential recovery encompassed amounts paid on Plaintiffs' behalf by the government as Section 8 housing assistance or, alternatively, was limited to what Plaintiffs paid out of pocket.[17] The Court invited the parties to file the present cross-motions to address the issue.[18]

---

[13] R. Doc. 108.

[14] R. Doc. 57 at 54-60. Plaintiffs also alleged an unjust enrichment claim. *Id.* However, in their motion for summary judgment on lease-related claims, Plaintiffs dismissed their unjust enrichment claim. R. Doc. 214-1 at 3. Accordingly, this Court DISMISSED WITH PREJUDICE Plaintiffs' unjust enrichment claim. *See* R. Doc. 284 at 3 n.14.

[15] R. Doc. 57 at 63.

[16] R. Doc. 284 at 20.

[17] *Id.* at 20 n.76.

[18] *Id.*

## II. PENDING MOTIONS

Plaintiffs argue that they should be entitled to recover as damages all rent paid on their behalf attributable to the common areas, facilities, and appurtenances of the apartment complex, regardless of who paid it.[19] Simply put, Plaintiffs contend that Defendants, as wrongdoers, "should not be allowed to pocket [c]lass [m]embers' federal housing benefits as a windfall for exploiting low-income tenants."[20] Citing *Bozeman v. State*, 879 So. 2d 692 (La. 2004), and *Louisiana Department of Transportation & Development v. Kansas City Southern Railway Co.*, 846 So. 2d 734 (La. 2003), Plaintiffs further argue that Louisiana's collateral source doctrine permits them to recover as damages federal benefits paid on their behalf.[21] Plaintiffs also point to persuasive authorities allowing plaintiffs to recover as damages rent amounts paid by federal housing subsidies where the landlord breached the warranty of habitability and the housing authority had not intervened in the case.[22]

In opposition to Plaintiffs' motion, and in support of their own position, Defendants argue that, under Louisiana's collateral source rule, Plaintiffs would receive an "impermissible windfall" if they are able to recover "amounts of rent paid by third-party government assistance programs on their behalf," because such payments did not diminish Plaintiffs' patrimonies, meaning that Plaintiffs would be placed in a better position than they would have enjoyed had the leases been performed.[23] Defendants contend that the issue "should turn on whether Plaintiffs' patrimony was

---

[19] R. Doc. 287.

[20] R. Doc. 287-1 at 1-2.

[21] *Id.* at 2-4.

[22] *Id.* at 3 n.13. Additionally, Plaintiffs argue that Defendants waived any right to seek a damages setoff for rental amounts paid on Plaintiffs' behalf by failing to plead it as an affirmative defense in their answer. *Id.* at 4-5; *see also* R. Doc. 293 at 6-10. In response, Defendants identify a number of instances when they raised the issue in the course of the litigation, thereby providing Plaintiffs with adequate notice of the issue. R. Doc. 289 at 7-16. However, because this Court finds that Plaintiffs prevail on the merits of the issue, it need not address this technical pleading argument.

[23] R. Doc. 286-1 at 1-3 (quote at 2); *see also* R. Doc. 289 at 1-4.

diminished through acquisition of Section 8 vouchers or whether they paid for the housing assistance," and because they did not, Plaintiffs should not recover as damages the rental amounts paid for common areas by the government assistance program.[24] Defendants further argue that Plaintiffs misconstrue *Bozeman* and *Kansas City Southern Railway*, and that the out-of-district cases involving government rental assistance programs are not persuasive because Louisiana's collateral source rule governs here.[25]

Plaintiffs oppose Defendants' motion, and reply in support of their own position, arguing that the collateral source rule explicitly applies to public benefits, including medical bills paid by Medicaid, and that Defendants are misreading *Bozeman*.[26] Plaintiffs explain that *Bozeman*, which allowed an injured plaintiff to recover from a defendant amounts paid by Medicaid on medical bills, but not the write-offs, does not stand for the proposition, as Defendants advance, that the collateral source rule only applies when an injured party's patrimony is diminished or the injured party gave consideration for the benefit.[27] Plaintiffs urge further that they have raised many claims, including breach of warranty and torts, and that the collateral source rule applies to all of them, including their breach-of-contract claim.[28] Moreover, say Plaintiffs, Defendants have the public policy argument "backwards" in seeking a windfall for themselves as wrongdoers when the collateral source rule contemplates any windfall going to the injured party.[29] Lastly, Plaintiffs argue that the out-of-state authorities they cite are indeed persuasive because they demonstrate that courts "uniformly award full damages to plaintiffs, including the rental amounts paid by federal subsidies, when defendants breach the warranty of habitability."[30]

---

[24] R. Doc. 286-1 at 4-5 (quote at 4); *see also* R. Doc. 289 at 1-4.
[25] R. Doc. 289 at 5-6.
[26] R. Docs. 290 at 1-4; 293 at 2-5.
[27] R. Doc. 293 at 2-5.
[28] R. Doc. 290 at 4-5.
[29] R. Doc. 293 at 1-2.
[30] *Id.* at 5.

Finally, Defendants reply in further support of their summary-judgment motion that, regardless of the legal theory – be it contract or tort – Plaintiffs cannot recover any portion of the rent paid on their behalf by government assistance because they did not pay for it, nor did it decrease their patrimony.[31] And yet again, Defendants contend that Plaintiffs are the ones misreading *Bozeman* and *Kansas City Southern Railway*, insisting that the Section 8 housing assistance at issue here is like the non-recoverable Medicaid write-offs at issue in *Bozeman*.[32]

## III. LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive

[31] R. Doc. 292 at 1-6.
[32] *Id.* at 6-8.

law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co*., 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*,

477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**B. Analysis**

The pending cross-motions ask the Court to determine whether Plaintiffs can recover as damages those portions of the rental amounts attributable to the common areas that were paid by government assistance. More simply stated (and as framed by the parties), the question is: who gets the windfall, Plaintiffs or Defendants? The answer must be Plaintiffs.

"The collateral source rule is a rule of evidence and damages that is of common law origin, yet embraced and applied by Louisiana courts." *Bozeman*, 879 So. 2d at 697. "Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution." *Kansas City S. Ry.*, 846 So. 2d at 739. Thus, the rule provides that "the payments received from the independent source are not deducted from the award the aggrieved party would otherwise receive from the wrongdoer." *Id.* The collateral source rule exists for "several reasons," but "[t]he reason most often stated is that the defendant should not gain an advantage from outside benefits provided to the plaintiff independently of any act of the defendant." *Id.* It also has the goal of deterring wrongdoing. *Id.*

Although the collateral source rule "typically applies to tort cases involving insurance payments or other benefits," it has "been applied to a variety of factual circumstances." *Bozeman*, 879 So. 2d at 698. For example, in *Kansas City Southern Railway*, the Louisiana supreme court held that the rule applies to cases arising under the Louisiana Environmental Quality Act where a damaged party seeks reimbursement for remediation expenses, although the federal government

had already covered much of the cost. 846 So. 2d at 740. In so holding, the court noted that it "believe[d] it is mere happenstance that the collateral source rule has been applied chiefly in the context of conventional La. Civ. Code art. 2315 tort." *Id.* at 741. The court thus recognized that Louisiana "courts have applied the doctrine to a range of situations where the collateral source is provided to the plaintiff by a government agency or even a gratuitous source," including medical expenses paid by Medicare and other government benefits. *Id.* at 740, 742-43 (quote at 740). The Louisiana supreme court in *Kansas City Southern Railway* emphasized that, when considering the application of the collateral source rule, these Louisiana "courts focused their analysis on the fact that a wrongdoer may not benefit, and an injured party's recovery may not be diminished, because of benefits received by the plaintiff from sources independent of the wrongdoer's procuration or contribution." *Id.* at 741. In other words, "[a] wrongdoer's liability should not be reduced by the amount of collateral source payments to an injured plaintiff, even where the nature of the collateral source is a public relief provided to the plaintiff by application of federal or state law." *Id.* at 743. Thus, if there is to be a windfall, the collateral source rule counsels that it should inure to the benefit of the injured party because, although there may be a double recovery, the wrongdoer does not face "a double burden" and should not reap the benefit of the victim's other benefits. *Id.* at 743-44; *see also Bozeman*, 879 So. 2d at 702.

Applying these principles to the case at bar, any potential windfall should go to Plaintiffs, not Defendants, regardless of the theory of recovery. At least one court in Louisiana has recognized that "there cannot be a blanket prohibition on the application of the collateral source rule to contract claims." *Metoyer v. Auto Club Family Ins. Co.*, 536 F. Supp. 2d 664, 670 (E.D. La. 2008). This is particularly true where the case has an "element of tort." *Id.* Here, Plaintiffs' breach-of-contract and breach-of-warranty claims both have an element of tort because, to prevail,

Plaintiffs must prove that the common areas were maintained in a substandard condition. *See id.*; *see also Ganheart v. Exec. House Apartments*, 671 So. 2d 525, 529 (La. App. 1996) (recognizing that a tenant may recover tort-like damages for uninhabitable premises, including mental anguish, anxiety, and worry).

Moreover, Defendants are mistaken that a diminution in the Plaintiffs' patrimony or payment for the benefit is required for the collateral source rule to apply. *Metoyer*, 536 F. Supp. 2d a 670. Contrary to Defendants' assertion, the Louisiana supreme court did not make such a blanket statement in *Bozeman*. *See generally* 879 So. 2d at 697-706. Instead, the court allowed the plaintiff to recover from the defendant amounts Medicaid actually paid for medical bills, just not the written-off amounts. *Id.* at 705-06. Medicaid, like Section 8 housing assistance, is a public benefit, and receiving the benefit does not diminish a person's patrimony. Although diminution of patrimony has been explained as preventing double recovery, the Louisiana supreme court has recognized that the collateral source rule may permit a windfall to a plaintiff where the alterative would be for the defendant to receive the windfall. *Kansas City S. Ry.* at 743-44; *see also Bozeman*, 879 So. 2d at 702. That is precisely the case here.

Persuasive authority also demonstrates that this is the correct result. For example, in *Anderson v. District of Columbia Housing Authority*, the tenant, a portion of whose rent was paid by government assistance, claimed that she was entitled to full rental abatement because the landlord's breach of the implied warranty of habitability deprived her of the benefit of her bargain. 923 A.2d 853, 855-58 (D.C. 2007). The court recognized that the portion of the rent paid by public assistance belonged to the public housing authority, but "absent a claim asserted by HUD or [the local housing authority], as between the landlord and the tenant, … the tenant was entitled to 100% of the … abatements." *Id.* at 859 (emphasis omitted). This result comports with the collateral

source rule's determination that any windfall should inure to the benefit of the injured party, not the wrongdoer. In this case, therefore, Plaintiffs can recover as damages on their breach-of-contract and breach-of-warranty claims any amounts paid for rent on their behalf by the government as Section 8 rental assistance for the provision and maintenance of the common areas, facilities, and appurtenances.[33]

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs' motion for partial summary judgment on recovery of rent paid on behalf of class members (R. Doc. 287) is GRANTED.

IT IS FURTHER ORDERED that Defendants' motion for partial summary judgment on recoverable damages (R. Doc. 286) is DENIED.

New Orleans, Louisiana, this 29th day of September, 2026.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

[33] Government housing assistance exists, in part, "[f]or the purpose of aiding low-income families in obtaining a decent place to live." 42 U.S.C. § 1437f(a); *see also* 24 C.F.R. § 982.1(a)(1) ("HUD pays rental subsidies so eligible families can afford decent, safe, and sanitary housing."). Under this rationale, funding of the "common areas" at complexes like Parc Fontaine, including amenities such as swimming pools, clubhouses, and fitness facilities, may not be the priority for government housing assistance. It stands to reason, then, that any portion of Plaintiffs' rent that was paid by government assistance was intended to cover first the costs of the individual apartment units, which are not at issue in this suit. Thus, the portion of the rent paid by Plaintiffs, and not by government assistance, may be deemed attributable first to the costs of the common areas and, so, would be recoverable as damages in this suit regardless of the Court's conclusion that the rental amounts paid by government assistance are recoverable.